**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-20473-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

     *Plaintiff*,

v.

JUNIOR ALEXANDER IONA-DEJESUS,
JOSE SALAS-BORREGO, and
WILFREDO CABRERA-ABREU,

     *Defendants.*

_____/

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS THE INDICTMENT**

This matter is before the Court on Defendants' joint motion to dismiss the indictment. [D.E. 16]. The motion is fully briefed and, after careful consideration of the motion, the record, the relevant authorities, and for the reasons discussed below, the Court finds that the motion should be **DENIED**.[1]

---

[1] On December 6, 2022, the Honorable Darrin P. Gayles referred the motion to the undersigned for a report and recommendation. [D.E. 18].

## *I.    BACKGROUND*

The Court held an evidentiary hearing on April 25, 2023.  Pursuant to that hearing and other information in the record, the Court makes the following findings of fact.

On September 10, 2022, a maritime patrol aircraft spotted a go-fast vessel ("GFV") traveling approximately 145 nautical miles south of Isla Beata – a small island in the Caribbean Sea that is part of the Dominican Republic.  This area is part of the Dominican Republic's Exclusive Economic Zone ("EEZ").

The GFV displayed no indicia of nationality.  The *Legare*, a United States Coast Guard ("USCG") cutter, was patrolling nearby and diverted to investigate.  Once in the vicinity, the *Legare* launched its helicopter and one of its smaller boats to interdict the GFV.  Once in the vicinity, USCG officers observed Defendants throwing items on the GFV into the sea.  The boarding team received a "Statement of No Objection" to conduct a "Right of Visit" boarding from their superiors at USCG District 7, and the GFV was subsequently boarded by USCG officers without the use of force.

Officer Michael Zimmerman, the person in charge of the USCG boarding team, determined that Defendants did not speak English and he therefore contacted Officer Arnaldo Ortiz Nieves via radio to serve as the boarding team's Spanish translator.  With the assistance of Officer Ortiz Nieves, each Defendant was individually asked whether he was the "master" or "person in charge" of the GFV and, in response, DeJesus identified himself as the master.

As part of the USCG's standard Right of Visit questions, DeJesus was then asked whether he wanted to make a claim of nationality or registry for the GFV. In response, DeJesus did *not* make a claim of nationality or registry. Because the master of the GFV failed to make such a claim, and because the GFV displayed no indicia of nationality, the USCG treated the GFV as a "vessel without nationality" and therefore a vessel subject to the jurisdiction of the United States.

A search of the GFV uncovered approximately 540 kilograms of a substance that field-tested positive for the presence of cocaine. Defendants, along with the suspected cocaine, were then transported to the *Legare*. The crew subsequently provided Defendants with medical care, food, water, and clean clothes. Although Defendants were shackled to the deck during most of their on-board detention, they were given regular access to the bathroom and remained under constant observation from USCG officers.

On September 12, 2022, as the Legare entered the Windward Passage (a strait between the islands of Cuba and Hispaniola), Defendants were transferred to another USCG cutter – the *Dauntless*. Aside from the change in vessel, the conditions of their confinement remained essentially unchanged.

On September 14, 2022, the Department of Justice determined that Defendants would be prosecuted in the Southern District of Florida. Around this time, Defendants' case was assigned to Special Agent Garrett Redfern of the Drug Enforcement Administration, and so the USCG determined a travel plan that would

allow for Defendants to be promptly brought to Miami without jeopardizing the mission objectives of the *Dauntless*.

To that end, on September 17, 2022, Defendants were transferred to another cutter – the *Spencer* – that was also patrolling the Windward Passage. Again, aside from the change in scenery, the conditions of detention remained relatively constant. The *Spencer* arrived in Miami Beach on September 20, 2022, which is the same day that Special Agent Redfern obtained a criminal complaint against Defendants. They were brought before a Judge for their initial appearance the following day.

## II.    ANALYSIS

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). Moreover, a motion that the court lacks jurisdiction may be made at any time while the case is pending. *See* FED. R. CRIM. P. 12(b)(2).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

4

Defendants submit multiple arguments in support of dismissal. First, Defendants argue that the Court lacks statutory subject matter jurisdiction. Second, Defendants argue that the MDLEA cannot constitutionally be applied in this case because Defendants were arrested inside an EEZ. Third, Defendants argue that the Government violated Federal Rule of Criminal Procedure 5(a)(1)(b) because their presentment to a Judge was unnecessarily delayed. Fourth, Defendants argue that the Government violated Federal Rule of Criminal Procedure 5(b) because the criminal complaint was not promptly filed in this case. And finally, Defendants argue that the foregoing rule violations also run afoul of the outrageous government conduct doctrine. Each argument will be explored in turn.

### A. *The Court has statutory subject matter jurisdiction.*

The Government has sustained its burden to show that the Court has statutory subject matter jurisdiction over this case. Pursuant to the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70501, *et seq.* ("MDLEA"), the United States has jurisdiction over vessels without nationality and a "vessel without nationality" is defined as, among other things, a "vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." 46 U.S.C. § 70502(d)(1)(B). The record sufficiently reflects that jurisdiction lies under the foregoing statute because, after he identified himself as the master of the GFV, DeJesus did not make a claim of nationality or registry for the GFV when Officer Zimmerman asked him to do so with the assistance of a

Spanish translator.  The record developed at the hearing, which includes reliable hearsay evidence based on official Coast Guard reports prepared at or near the time of the seizure, shows that all necessary questions were asked of the Defendants and that those questions were translated for them.[2]  Defendants do not dispute that fact with any evidence whatsoever.  So there is no factual conflict in the record; thus we can rely upon the existing record to find that the argument for dismissal due to lack of statutory subject matter jurisdiction must be DENIED.

### B.     *The MDLEA applies in a foreign EEZ.*

It is undisputed that the GFV was seized within the Dominican Republic's EEZ.  The legal significance of this fact, however, is disputed: Defendants contend that the MDLEA cannot apply within an EEZ because such application would exceed the authority granted to Congress by the Constitution to "define and punish . . . Felonies committed on the high Seas," which is the enumerated power that Congress relied on to enact the MDLEA.  U.S. CONST., art. I, § 8, cl. 10; *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012) ("[T]he Felonies clause is textually limited to conduct on the high seas[.]").

Unfortunately for Defendants, the Eleventh Circuit has defined the high seas to constitute "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003); *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014)

---

[2] The government has supplemented the records admitted at the hearing with a written statement from the Coast Guard translator, Petty Officer Nieves, that attests that the master of the vessel made no claim of nationality. [D.E. 31].

("[W]e have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas."). A vessel outside the recognized 12-mile limit of a nation's territorial seas is a "vessel located within international waters" subject to the United States' jurisdiction under the MDLEA. *McPhee*, 336 F.3d at 1247 (holding that a vessel intercepted 17 miles from the Bahamas was "unambiguously in international waters at the time of its interception."). Furthermore, several courts, including some in this district, have held that a nation's EEZ remains part of the high seas and does not fall within the territorial waters of that nation. *See, e.g., United States v. Alfonso*, No. 21-20306-CR, ECF No. 47 at 5-6 & n.2 (S.D. Fla. Nov. 22, 2021) (Altonaga, C.J.) (holding that the defendants were in the high seas when interdicted in the Dominican Republic's exclusive economic zone and collecting cases holding that territorial waters only extend to twelve nautical miles off the coast); *United States v. Hernandez Osorio*, No. 22-20592-CR, ECF No. 35 at 5-8 (S.D. Fla. Apr. 12, 2023) (Bloom, J.) (holding that an EEZ constitutes the high seas); *Dilbert v. United States*, No. 8:13-CV-2189-T-30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (holding that the petitioner "misinterpret[ed]" the United Nations Convention on the Law of the Sea and applying the "12-nautical-mile definition of territorial waters" as required by *McPhee*); *see also United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (holding that the exclusive economic zone is "merely part of the high seas where that nation has special economic rights and jurisdiction").

Here, it is undisputed that Defendants were intercepted approximately 145 miles south of the Dominican Republic. Applying the foregoing precedent, it is clear that Defendants were captured on the high seas even though the GFV was seized within the Dominican Republic's EEZ. Accordingly, Defendants' argument is foreclosed by binding precedent, and so their motion must be DENIED on that basis.

### C.   *The Government did not violate Rule 5 or the outrageous conduct doctrine.*

Federal Rule of Criminal Procedure 5(a)(1)(b) provides that a "person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." Accordingly, Defendants submit that the 11-day delay between their capture in the Caribbean and initial appearance in Miami constitutes an unreasonable delay necessitating the dismissal of the indictment. Considering that the Eleventh Circuit has approved of a 49-day delay in a similar case, Defendants' theory is unpersuasive given this record. *See United States v. Cabezas-Montano*, 949 F.3d 567, 590-94 (11th Cir. 2020).

Unnecessary delay arguments made pursuant to Federal Rule of Criminal Procedure 5(a)(1)(B) are analyzed in accordance with the *Purvis* factors. *See United States v. Purvis*, 768 F.2d 1237, 1238-39 (11th Cir. 1985); *Cabezas-Montano*, 949 F.3d at 591-92 (applying the *Purvis* factors). Accordingly, to determine whether the delay in presentment was unnecessary, the Court must consider: "(1) the distance between the location of the defendant's arrest in international waters and the U.S. port he was brought to; (2) the time between the defendant's arrival at the U.S. port and his presentment to the magistrate judge; (3) any evidence of mistreatment or improper

interrogation during the delay; and (4) any reason for the delay, like exigent circumstances or emergencies." *Cabezas-Montano*, 949 F.3d at 591.

With respect to the first *Purvis* factor, the timeline and location associated with Defendants' arrest are not in dispute. Defendants were captured 145 miles south of the Dominican Republic – some 700 miles from Miami as the crow flies. And it is worth noting at this juncture that, in these MDLEA cases, it is the policy of the USCG to complete its mission with its detainees on board rather than cancel its operational plans and then bring the detainees to the United States as quickly as possible. The USCG's predetermined route can be, and often is, indirect. It therefore understandably takes some time for detainees like Defendants to reach our shores. Here, the record reflects that it took the *Legare* two days to rendezvous with the *Dauntless*. It then took five more days for the *Dauntless* to rendezvous with the *Spencer*. And then it took three days for the *Spencer* to reach Miami Beach. Although the route taken was somewhat indirect, we cannot say that this factor weighs against the Government in light of the USCG's need to meet its mission obligations while transporting Defendants to this Court.

With respect to the second *Purvis* factor, the time between Defendants' ultimate arrival in Florida and their presentment was under 24 hours. They arrived in Miami Beach in the afternoon and were brought to their initial appearance in Miami the following morning. Under the circumstances, this discrete one-day delay was reasonable and therefore cannot weigh against the Government.

With respect to the third *Purvis* factor, there is no evidence in the record to suggest that Defendants were either mistreated or subject to any improper interrogation during the delay. This factor cannot weigh against the Government.

And, regarding the fourth *Purvis* factor, there are only two reasons for the delay that can be adduced from this record. First, the Department of Justice needed time to determine where Defendants' case would be prosecuted and to coordinate travel plans with the USCG. This took no more than five days. Second, the USCG needed to meet their mission objectives while simultaneously ferrying Defendants to Miami. As a result, Defendants spent ten days at sea on three different ships before being delivered to the federal courthouse in Miami. Neither of these reasons can weigh against the Government. It is empowered by the MDLEA to prosecute these cases in any district in the United States. 46 U.S.C. § 70504(b). And the USCG's obligation to maintain their patrol obligations directly relates to the national security of this country. Indeed, in the Southern District of Florida, an 11-day travel itinerary is remarkably short for an MDLEA prosecution. So, all things considered, we cannot say that the delay in this case violated Federal Rule of Criminal Procedure 5(a)(1)(B) and the motion should therefore be DENIED with respect to this argument.[3]

---

[3]     Defendants also argue that Federal Rule of Criminal Procedure 5(b), which requires a magistrate judge to "promptly" make an independent probable cause determination, was violated because the Fourth Amendment requires the Government to secure a criminal complaint within 48 hours of arrest. *See County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Given the post-pandemic realities of remote work and the undersigned magistrate's substantial experience processing electronic criminal complaints, it does indeed seem counterintuitive that the Government cannot (1) decide where to prosecute an MDLEA case and (2) acquire a criminal complaint within 48 hours of arrest. Nevertheless, Defendants' argument is

Defendants finally submit that the indictment should be dismissed under the outrageous conduct doctrine. They correctly observe that, in 1973, the Supreme Court said that we "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," but this Court does not agree that this is such a case. *See United States v. Russell*, 411 U.S. 423, 431-32 (1973). We cannot say that this record presents a due process violation. Indeed, compared to travel delays in other MDLEA cases, Defendants' ten days at sea were remarkably brief. The record here simply does not allow the Court to find that any outrageous delay or conduct occurred here that would undermine the government's right to prosecute any action under federal law. Accordingly, this aspect of the Motion is due to be DENIED on that basis.

## III.   CONCLUSION

For the foregoing reasons, the motion should be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the District Judge assigned to this case. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the

---

foreclosed because Defendants are neither citizens nor residents of the United States; thus, having been arrested in international waters, controlling precedent provides that they do not have Fourth Amendment rights and are therefore ineligible to claim the benefits of *McLaughlin*'s 48-hour rule. *See, e.g., Cabezas-Montano*, 949 F.3d at 593-94. Nothing in the record indicates that Defendants entered the territorial waters of the United States before September 20, 2023. Accordingly, we do find that Federal Rule of Criminal Procedure 5(b) has been violated. The motion should therefore be DENIED in that regard as well.

Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of May, 2023.

_____
EDWIN G. TORRES
United States Magistrate Judge